IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JUSTIN LEE BAKER,                 )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     CASE NO. 2:20-CV-36-WHA-CSC
                                  )              (WO)
                                  )
ANTHONY OMSBUDSMAN, *et al.*,     )
                                  )
          Defendants.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint, as amended, filed on January 15, 2019, by Justin Lee Baker, an indigent state inmate, challenging the medical care he received while housed at Staton Correctional Facility. (Docs. 1 and 14).[2]  He claims that the Defendants have acted with deliberate indifference to his serious medical needs because they refused to refer him to a free world doctor to perform surgery to reverse his colostomy and treat his hernia.  He seeks monetary damages and declaratory and injunctive relief.  (Doc. 1 at p. 4).

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2] Although Plaintiff complains about the medical care he received at Kilby and specifically identifies Dr. Rahming, he does not name as Defendants Dr. Rahming or any other medical provider at Kilby. Moreover, he excludes the time period he spent at Kilby from the time period he claims he was provided constitutionally inadequate care.

Plaintiff names Warden Joseph H. Headley as the sole Correctional Defendant and sues him in his official capacity, only.  As Medical Defendants, he names Guillaume Anthony, who is an LPN and the omsbudsman for Station[3]; Dr. Michael Borowicz, who is a medical doctor licensed to practice in Alabama, is the Medical Director at Staton and was responsible for the medical care provided to Baker[4]; Kelly Rice, who is a registered nurse and is the Director of Nursing at Staton[5], and Darryl Ellis, who is a registered nurse and is the Health Services Administrator at Staton[6].  He sues each Medical Defendant in their individual and official capacities.  (Doc. 1 at p. 1).

Correctional Defendant Warden Headley filed a special report. (Doc. 26). The Medical Defendants also filed special reports, as supplemented. (Docs. 27 and 29). These special reports, as supplemented, included relevant evidentiary materials in support of these reports, specifically affidavits and prison documents addressing the claims presented by Baker.  In these documents, the Defendants deny they acted with deliberate indifference to Baker's medical needs.

After reviewing the special reports and exhibits, the court issued an order requiring Baker to file a response to the Defendants' special reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.

---

[3] It is undisputed that Guillaume Anthony had no role in determining whether Baker "would benefit from a reverse colostomy."  (Doc. 29 at pp. 3-4).

[4] *See* Docs. 27-3 at p. 2 and 36-1 at pp. 1-6.

[5] It is undisputed that Rice had no role in determining whether Baker "would benefit from a reverse colostomy."  (Doc. 27-4 at pp. 1-2).

[6] It is undisputed that Ellis rarely provided hands on care to inmates and had no involvement with the Plaintiff's care or decisions about his free-world treatment or surgery.  (Doc. 27-3 at pp. 1-2).

(Doc. 30).  This order specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 30 at pp. 2-3). Baker filed a response to this order.  (Doc. 51).  Pursuant to the directives of the order entered on September 14, 2020, the court now treats the Defendants' special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the Defendants.

## II.  SUMMARY JUDGMENT STANDARD

To survive the properly supported motion for summary judgment submitted by ADOC Defendants, Plaintiff must produce some evidence supporting his constitutional claims.  *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element

essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). "The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept factual averments completely unsupported by the record." *Jones v. Wal-Mart Assocs., Inc.*, No. 1:19-CV-03705-SDG, 2021 WL 243285, at *2 (N.D. Ga. Jan. 25, 2021) (citing *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Although a *pro se* complaint is entitled to a less strict interpretation, a *pro se* plaintiff is not excused from meeting the essential burden of establishing that there is a genuine issue as to a fact material to his case. When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required.") (Citation and punctuation omitted in original); *Nalls v. Coleman Low Fed. Inst.*, 307 F.

4

App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.")

Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Baker has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the Defendants.

### III.  FACTS

Plaintiff claims that from January 22, 2019, through January 20, 2020, the Defendants treated his serious medical needs with deliberate indifference because "I have a colostimy {sic} bag and a hernia in my stomach.  I've filed grievances and complained about my on-going irreparable harm several times."  (Doc. 1 at pp. 2-3).  Indeed, Plaintiff's medical records from Kirklin Clinic at UAB show that on April 13, 2018, he was seen by Dr. Daniel Chu complaining of a colostomy stricture.  (Doc. 14-1 at p. 1).  Following a self-inflicted gunshot wound to his stomach in October, 2017, medical records note Plaintiff underwent three abdominal surgeries in November, 2017, "ultimately resulting in bowel resection and an end colostomy."  (Doc. 14-1 at pp. 1-2).  Dr. Chu noted a plan for colostomy reversal on June 12, 2018.  (Doc. 14-1 at p. 2).

Plaintiff was arrested and sent to Kilby Correctional Facility on May 29, 2018, where he spoke with Dr. Rahming about his June, 2018 surgery date, but claims Dr.

Rahming, who is not a named defendant, "denied my surgery, told me it wasn't a necessity to have this done in prison." (Doc. 14 at p. 1). Thereafter, Plaintiff was transferred to Staton Correction Facility, where he put in a sick call and was seen by Dr. Borowicz, whom he also told about his medical problems and surgery date, but again claims that Dr. Borowicz "denied me, said to wait till my release of prison to have it performed." *Id.* Specifically, Baker claims that "relief should be granted to me because of all the pain/emotional distress I went through having that in the dorms, inmates threatening me verbally, calling me names, just to use the restrooms." (Doc. 14 at p. 2).

Defendant Michael Borowicz, D.O. testified by affidavit as follows:

I am a Medical Doctor licensed to practice medicine in the state of Alabama. I am the Medical Director at the Staton Correctional Facility located in Elmore County, Alabama. I am employed by Wexford Health Sources, Inc. Wexford currently holds the contract with the Alabama Department of Corrections to provide health care related services to Alabama state incarcerated inmates.

Mr. Baker entered his incarceration with the Alabama Department of Corrections as a colostomy patient after suffering a gun shot wound to the abdomen on November 23, 2017.

The colostomy procedure involves removing an injured and/or infected portion of the colon creating an opening in the abdominal wall to which the colon is attached and permitted to expel gas and feces into a colostomy bag.

While a surgical procedure known as a "colostomy reversal" is available in certain instances, the advisability or propriety of such a surgical procedure depends in large part, upon a large variety of factors including, for example, the amount of the colon injured and/or removed, the manner in which the colon healed and the

6

likelihood of a successful colostomy reversal.  It is well-settled among medical professionals that a colostomy procedure should not be pursued in the event of significant questions related to bowel function because the unsuccessful colostomy reversal may result in very significant complications including sepsis and/or infection.

**Given the nature of the trauma (i.e., a gunshot wound), it was concluded that Mr. Baker would possibly not likely recover full bowel function to the extent necessary to justify the colostomy reversal. It was determined that a colostomy reversal, without any medical complications prompting the surgery, would likely cause Mr. Baker a great deal of discomfort without any significant benefit.**

**Without the medical necessity compelling the colostomy reversal, there was no medical indication or any surgical benefit for Mr. Baker to undergo such surgery.**

**Mr. Baker experienced medical problems associated with a ventral incisional hernia. As a result, Mr. Baker was sent out to see Leslie Bowrie[7], M.D., a General Surgeon, located in Montgomery, Alabama.** The history as noted by Dr. Bowrie on April 18, 2019, was as follows:

> History: The patient is a 34 year old inmate who I am seeing for Dr. Borowicz who wishes to have him reversed. This patient had a gunshot and a stab wound in 2017, up at UAB, and had some kind of an ileostomy or colostomy done. He comes in with a very large incisional hernia. The patient states it hurts him pretty constantly and he wants to have it reversed.
>
> ***
>
> Abdomen: His abdomen is extremely protuberant with a well-defined diffused hernia sac that extends across his abdomen transversely.   It goes down from his umbilicus and upwards to mid-way of his abdomen that includes the area of his ostomy. It is difficult to tell if this is a loop ileostomy versus an in-lleostomy versus an in-colostomy.  I have no notes to go by at this point.
>
> Assessment/plan:

---

[7] Review of the medical records demonstrates that the provider is misnamed in Dr. Borowicz' affidavit. Rather, Plaintiff saw Dr. Wesley Barry on April 18, 2019, and throughout the course of his treatment.  Dr. Barry also ultimately performed Plaintiff's reversal surgery.  (Doc. 27-5 at pp. 1-20).

Impression: Patient that has had multiple trauma to his abdomen, multiple operations now has an in-ostomy and a very large ventral hernia and wishes reversal.

Plan: Before I can do this, we need to get some idea what was done on him originally. We need to see what his rectal stump looks like and get a CT of his abdomen and get the Op reports from the previous surgery and have the patient back for final disposition and planning.

1.   Ventral   incisional   hernia

        Hernia:Care instructions

A CT was taken of Mr. Baker's pelvis on June 10, 2019. The radiologist read the

CT as follows:

Exam:

JIC CT Abd/pelvis with contrast.

History: ileostomy reversal

Comparison: CT Abel/pelvis with contrast dated 11/29/2018

Technique:

Multiple 5 mm axial images were obtained of the abdomen and pelvis following the administration of 75 cc of isovue 3700 IV contrast. Coronal and sagittal reformats were provided. Automated exposure utilized.

Findings:

There is a density in the left lung base. Is probably some scarring. There is some metallic densities that gorse across the upper abdomen and appears to be metallic gunshot shrapnel. There is low-attenuation changes and the liver appears to be fatty infiltration. There is right upper quadrant colostomy. In the ventral abdominal wall, there is a large hernia sac containing small bowel and large bowel. No bowel obstruction is identified. The gall bladder, pancreas, abdominal aorta, adrenals, kidneys, urinary bladder appear satisfactory. Post splenectomy.

Impression:

Large ventral abdominal wall hernia and hernia sac containing small bowel and large bowel and it appears similar to the prior study. Right upper quadrant colostomy.

Mr. Baker underwent a reverse colostomy at Jackson Hospital on January 20, 2020. The notes from the surgery performed on that date state in part as follows:

Date of procedure: 1/20/2020

Pre-operative diagnosis:


1.      End colostomy, status post gunshot wound to the abdomen with a long Hartmann' s pouch.

2.      Multiple incisions ventral hernias.

Post-operative diagnosis:


1.      End colostomy, status post gunshot wound to the abdomen with a long Hartmann's pouch.

2.      Multiple incisional ventral hernias.

3.      Massive intra abdominal adhesions.

Procedure performed:


1.      Exploratory lap, lysis of adhesions, take-down of colostomy and mobilization of splenic flexure with end to end anastomosis between the right colon and left colon.

2.      Component separation, repair of massive ventral hernia using strattice bowel mesh.

 Findings:

 This is a 34 year old inmate who has sustained two injuries to his

9

abdomen requiring trauma, exploration, the last of which was about 2 years ago and was done at UAB. The patient had a gunshot to his abdomen, sustained injuries to the spleen which was removed, injury to the transverse colon which was removed with an end-colostomy resulting in a long Hartmann's pouch, and of course, resultant intra abdominal adhesions, resultant wound infection and resultant multiple large incisional ventral hernias. The patient presents to get his ostomy reversed and to restore GI continuity as well as to try to repair the very large ventral hernias. Procedures with risks are explained to the inmate . Risks include, but not limited to organ injury, injury to other bowel, possible fistula formation, intra abdominal infection, bleeding,  failure of the operation, need for re-operation, and the attendant  risks associated with the patient's comorbidities, mainly his obesity and the fact that he has had multiple abdominal exploration for trauma.  All were explained to the inmate. No promises made.

Mr. Baker has been followed subsequent to the surgery performed on January 20, 2020.

At no time were Mr. Baker's necessary medical needs denied or delayed at any time.

In my opinion, based upon my education, training and experience, Mr. Baker at all times received medical treatment within the standard of care of physicians practicing medicine in the state of  Alabama.

(Doc. 27-1 pp. 1-6, replaced by Doc. 36-1 pp. 1-6). (Emphasis added).

Plaintiff complains that between January 22, 2019, and January 20, 2020, Defendants were deliberately indifferent to his medical needs because they denied him surgery to reverse his colostomy and to repair his hernia.   Plaintiff was transferred from Kilby to Staton sometime after September, 2018 and his requests for reversal surgery were denied following a December 19, 2018, medical interview at Staton.  (Docs. 14-2 at pp. 1-3; 14-3 at p. 1).  Plaintiff filed his first grievance at Staton on January 22, 2019.  *Id.*  Medical records confirm on February 5, 2019, a

Wexford Health referral request for Plaintiff to see a free world doctor was created, which was approved on February 11, 2019, and the appointment originally scheduled for February 15, 2019, was rescheduled for April 18, 2019. (Doc. 27-5 at p. 2). This document contains Dr. Borowicz' signature. *Id.* On April 18, 2019, Dr. Wesley Barry, a general surgeon at Jackson Hospital in Montgomery, examined Plaintiff. On June 10, 2019, a CT scan was conducted on Plaintiff's abdomen. (Docs. 27-5 at pp. 7-9; 36-1 pp. 5-6).

On September 9, 2019, and September 26, 2019, Plaintiff was seen by medical personnel at Staton, where he inquired about the date for his surgery. (Doc. 27-5 at p. 10). No distress and no complaints of pain were noted at these visits. *Id.* On November 8, 2019, Dr. Barry ordered that the day before Baker's surgery his colostomy be irrigated, clear liquids after lunch only with milk of magnesium and fleet enema administered at 6:00 p.m. (Doc. 27-5 at p. 11). On December 8, 2019, Dr. Barry prescribed for Baker half day bowel prep instructions prior to surgery. (Doc. 27-5 at p. 12). January 20, 2020, Dr. Barry performed surgery on Plaintiff which included a "take down of his colostomy" and "repair of massive ventral hernia." (Docs. 27-5 at pp. 13-17; 36-1 pp. 5-6).

Plaintiff filed several grievances and appeals from those grievances. However, the August, 2018 grievances and appeals therefrom are filed against

medical personnel at Kilby, who have not been named as defendants in this action, and predate the time period during which Plaintiff claims Defendants treated him with deliberate indifference.  (Doc. 14-2 at pp. 1-3).  For the sake of completeness, the grievances, responses and appeals dealing with Kilby personnel, are summarized as follows:

> August 27, 2018, Kilby Grievance – Plaintiff complains that doctor a Kilby "denied my colostomy bag removal surgery, said needed to wait until I leave prison of a 10-year sentence or more to have this surgery . . . **I need thisdone because it causes me pain when I have bowel movements.  Also, I'm an inmate of DOC which is suppose to take care of all my medical needs."**

(Doc. 14-2 at p. 1) (Emphasis added).

> August 28, 2018, Response -- M. Lowe, Department Head- "I spoke with Dr. Rahming and it has been decided that based on the information surgery has been denied.  **The alternate plan is to continue onsite observation and care as need.**  Please to not hesitate to submit a request if you have other concerns.

*Id.*  (Emphasis added).  Plaintiff twice appealed the denial by Dr. Rahming at Kilby Correctional Facility. First, he appealed on August 29, 2019, to which M. Lowe, Department Head responded on September 10, 2018, "[a]gain, I have spoken with Dr. Rahming and states that surgery at this time is still not a medically {sic} necessity due to the care that can be provided to you at this facility." (Doc. 14-2 at p. 2).  Second, he appealed again on September 10, 2018, to which M. Lowe, Department Head responded on September 18, 2018, "[y]our chart was reviewed by the medical director(s) of the facility (Wexford) and the State of Alabama.  Your surgery was denied per the medical

director's decision."  (Doc. 14-2 at p. 3).

Thereafter, Plaintiff was transferred to Staton and he filed grievances against the

Defendants in this action beginning in January 2019.  Those grievances, responses and

appeals are summarized as follows:

> January 22, 2019, Staton Grievance – Plaintiff complains that a doctor at Staton
> denied him medical treatment stating "I have a colostomy bag that is restricted
> and causes me ongoing pain. This is a serious matter it hurts me when I have
> bowel movements . . .  The doctor at Staton hasn't even examined my medical
> situation.  All he done was called the doctor from Kilby and he said, 'No'.  How
> could they possibly know how much pain I'm in by this action.  Someone's at
> fault here.

(Doc. 14-3 at p. 1). On January 24, 2019, the Department Head responded, but the

signature and specific response are illegible.  *Id.*  On February 2, 2019, the Plaintiff filed

an appeal of this grievance to which Defendant Nurse Rice responded as Department

Head as follows:

> Everyone is denied reversal of colostomies as this type of proceeder {sic} is
> considered cosmetic in design by ADOC and under their policies.  So you will
> have to wait until you are out of prison to get it done.  Sorry about it but nothing
> can be done.  Reversals are just not considered a medical necessity.

(Doc. 14-3 at p. 2). Eleven months later, on December 18, 2019, the Plaintiff filed a

grievance and appeals therefrom with Defendants Warden Headley, (Doc. 14-3 at pp. 3,

4, 9), G. Anthony, ombudsman, (Doc. 14-3 at pp. 5, 6, 10), Mr. Ellis, Staton Health

Services Administrator, (Doc. 14-3 at pp. 7, 11), Mrs. Rice, Staton Director of Nursing

(Doc. 14-3 at pp. 8, 12).  These grievances all state as follows:

> I have a colostimy {sic} bag that causes me on-going irreparable harm.  I went to Dr. Borowicz about this medical problem, he told me my next step was surgery, and that they would schedule an appointment.  They sent me to the free world to get all the pre-testing before surgery.  On 12/18/2019, they put me in Healthcare MOU for 3 days, told me I was there for a bowel prep to clean my stomach for surgery, then they released me back to the dorm.  I need this surgery, it causes me a lot of pain.  Can you help?

*Id.*  On December 27, 2019, Defendant G. Anthony, responded, "I understand your situation, but I have scheduled you an appointment.  Your appointment 1/7/2020. (Doc. 14-3 at p. 5).    Likewise, on January 2, 2019, Department Head, whose signature is illegible responded, "[y]our appointment was rescheduled and you have a pending appointment."  (Doc. 14-3 at p. 3). Thereafter on January 20, 2020, Dr. Barry performed surgery on Plaintiff which, included a "take down of his colostomy" and "repair of massive ventral hernia" (Docs. 27-5 at pp. 13-17; 36-1 pp. 5-6).

In summary, the Plaintiff's medical and grievance history make clear that while at Kilby Baker sought to have his colostomy reversed, noting pain when voiding his bowels, a previous recommendation by his free-world treating physician, and his right as a DOC inmate to reversal surgery.  (Doc. 14-2 at p. 1).  On January 22, 2019, after his transfer to Staton, Plaintiff filed a grievance complaining of continuing pain.  (Doc. 14-3 at p. 1).    Plaintiff was advised by Defendant Nurse Rice on February 2, 2019, that a simple colostomy reversal is not considered a "medical necessity" under ADOC policy. (Doc. 14-3 at p. 2).    Dr. Borowicz testified that Plaintiff "experienced medical problems associated with a

ventral incisional hernia." (Doc. 36-1 at p. 3). On February 5, 2019, Dr. Borowicz initiated a referral of Plaintiff to a free world doctor, which was approved on February 11, 2019, and the appointment originally scheduled for February 15, 2019, was rescheduled for April 18, 2019. (Doc. 27-5 at p. 2).

On April 18, 2019, Plaintiff saw Dr. Barry at Jackson Hospital to determine the best approach to address his colostomy, with hernia complications. *Id.* at pp. 3-4. On June 10, 2019, a CT scan was conducted on Plaintiff's abdomen. *Id.* On December 18, 2019, Plaintiff was sent to the Healthcare unit at Staton for three days for bowel prep for surgery. He was released back to the dorm. Plaintiff filed a grievance for this delay with his surgery. (Doc. 14-3 at pp. 3-12). Thereafter, Defendant G. Anthony advised Plaintiff that his appointment with Dr. Barry was rescheduled for January 7, 2020. (Doc. 14-3 at p. 5). On January 20, 2020, Dr. Barry performed surgery on Plaintiff which, included a "take down of his colostomy" and "repair of massive ventral hernia" (Doc. 36-1 pp. 5-6). Ultimately, Plaintiff claims in his amended complaint that "relief should be granted to me because of all the pain/emotional distress I went through having that in the dorms, inmates threatening me verbally, calling me names, just to use the restrooms." (Doc. 14 at p. 2).

# IV.  DISCUSSION

## A.    ABSOLUTE IMMUNITY

To the extent Plaintiff lodges claims against the Defendants in their official capacities and seeks monetary damages, these Defendants are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. *Id*.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

16

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.1990)).  In light of the foregoing, all Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).  Accordingly, all claims against Defendants in their official capacities for monetary damages are due to be dismissed.  The Court will now turn its attention to Plaintiff's claims against Warden Headley in his official capacity for injunctive or declaratory relief and next to Plaintiff's claims against the Medical Defendants in their individual capacities for both monetary damages and injunctive relief.[8]

---

[8] Plaintiff fails to state in his complaint, as amended, the specific nature of the injunctive and declaratory relief he seeks.

## B.  RESPONDEAT SUPERIOR

It is undisputed that Dr. Borowicz was the sole Defendant who provided medical care to Plaintiff and determined the necessary course of treatment for his colostomy. (Docs. 27-3 at p. 2; 36-1 at pp. 1-6).  However, the record leaves the court to guess as to each Defendants' supervisory responsibilities and ultimately the healthcare policy making structure at Staton.  Even so, the law is well established; supervisory officials cannot be held liable in §1983 actions under any theory of respondeat superior or vicarious liability.  *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994). Thus, to the extent Plaintiff seeks to hold Warden Headley or any other Defendant liable for the treatment provided by Dr. Borowicz, and any delay resulting in the process, he is likewise entitled to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Even assuming *arguendo* that Warden Headley or any other Defendant exerted some control over the manner in which Dr. Borowicz rendered such treatment, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability]. . . .   A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties.  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation and parentheses omitted); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  Thus, liability for actions of Dr. Borowicz could attach to Warden Headley or any other Defendant, only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

The record is clear that Warden Headley and the other Defendants, did not personally participate or have any involvement, direct or otherwise, in the medical

19

treatment provided to Plaintiff by Dr. Borowicz.  (Docs. 26-1 at pp. 1-4, 27-3 at pp. 1-2, 27-4 at pp. 1-2, 29 at pp. 3-4).[9]  Warden Headley testified, "[a]t no time have I had any conversations with any medical providers with regard to medical care or treatment needed by Mr. Baker or provided to Mr. Baker."  (Doc. 26-1 at p. 2).  Additionally, he testified, "[a]t no time have I had any conversations with any medical providers with regard to the necessary medical care or treatment needed by Mr. Baker or provided to Mr. Baker."  *Id.*  Indeed, the medical records before the court demonstrate that Dr. Borowicz made all decisions relative to the treatment provided to Plaintiff and treated him in accordance with his professional judgment upon assessment of Plaintiff's physical condition.  (Docs.  27-3 at p. 2; 36-1 at pp. 1-6).

In light of the foregoing, Warden Headley and any other Defendant can be held liable for decisions of Dr. Borowicz if they undertook actions which bear a causal relationship to the purported violation of Plaintiff's constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of Warden Headley and the other Defendants, Plaintiff must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[]

---

[9] Defendant Guillaume Anthony, LPN and Staton Ombudsman, testified that he had no role in determining whether Baker "would benefit from a reverse colostomy."  (Doc. 29 at pp. 3-4).  Defendant Kelly Rae Rice, RN and Director of Nursing at Staton testified that she had no role in determining whether Baker "would benefit from a reverse colostomy."  (Doc. 27-4 at pp. 1-2).  Defendant Darryl Ellis, RN and Health Services Administrator at Staton, testified that he rarely provided hands on care to inmates and had no involvement with the Plaintiff's care or decisions about his free-world treatment or surgery.  (Doc. 27-3 at pp. 1-2).  Plaintiff provides no evidence to dispute this evidence.

[the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in deliberate indifference to [his medical needs], or . . . facts [that] support an inference that [the correctional defendant] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).[10]

Defendant Nurse Rice's response to Plaintiff's February 2, 2019, grievance states the following:

> Everyone is denied reversal of colostomies as this type of proceeder {sic} is considered cosmetic in design by ADOC and under their policies.  So you will have to wait until you are out of prison to get it done.  Sorry about it but nothing can be done.  Reversals are just not considered a medical necessity.

(Doc. 14-3 at p. 2).  Dr. Borowicz explained in his affidavit generally when reversals constitute a "medical necessity" and addressed his application of this policy and procedure to Plaintiff.  Specifically, he stated the following:

> Given the nature of the trauma (i.e., a gunshot wound), it was concluded that Mr. Baker would possibly not likely recover full bowel function to the

---

[10] The record before the court contains no probative evidence to support an inference that Warden Headley, or any other Defendant, directed Dr. Borowicz to act unlawfully or knew that he would act unlawfully and failed to stop such action. In addition, Plaintiff has presented no evidence of obvious, flagrant or rampant abuse of continuing duration regarding his receipt of medical treatment from Dr. Borowicz in the face of which Warden Headley, or any other Defendant, failed to take corrective action. Instead, the undisputed medical records indicate that Baker had access to Dr. Borowicz and medical care at Staton.

extent necessary to justify the colostomy reversal. It was determined that a colostomy reversal, without any medical complications prompting the surgery, would likely cause Mr. Baker a great deal of discomfort without any significant benefit.

Without the medical necessity compelling the colostomy reversal, there was no medical indication or any surgical benefit for Mr. Baker to undergo such surgery.

Mr. Baker experienced medical problems associated with a ventral incisional hernia. As a result, Mr. Baker was sent out to see Leslie Bowrie, M.D., {sic} a General Surgeon, located in Montgomery, Alabama.

(Doc. 36-1 at pp. 2-3). Taking the evidence in the light most favorable to Plaintiff as the Court must on summary judgment, the Court concludes that the evidence demonstrates ADOC had a policy or practice to restrict simple colostomy reversal surgeries available to incarcerated inmates, unless other complicating factors, such as a hernia, colostomy failure, or extreme pain made the surgery a medical necessity. (Doc. 14-3 at p. 2, Doc. 36-1 at pp. 2-3.) This policy was followed and applied in Plaintiff's particular circumstances. *Id.*

The Court notes with concern that Warden Headley does not address the existence of this policy and whether he was responsible for its creation or continued application. (Doc. 26-1 at pp. 1-4). Likewise, none of the other Defendants discuss or deny their part in its creation or application. (Docs. 27-3 at pp. 1-2, 27-4 at pp. 1-2, 29 at pp. 3-4). Thus, a question of fact exists as to whether respondeat superior liability is applicable to each Defendant making each liable for Dr. Borowicz' treatment of Plaintiff. Stated another way, whether summary judgment is appropriate in this case for all Defendants

hinges upon whether Dr. Borowicz treated Plaintiff with deliberate indifference pursuant to this policy. Accordingly, the Court will turn its attention to the Plaintiff's deliberate indifference claims.

## C. DELIBERATE INDIFFERENCE

> **1.   <u>Standard of Review</u>.**   That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).  Instead, something more must be shown.  Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's

injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).   When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248,1255 (11th Cir. 1999) (holding that, for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).   To proceed on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment." *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986).

In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things[:] awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . .

24

draw[ing] of the inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.  When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent."  *Massey v. Montgomery County Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S. Ct. at 291; *Mandel* [*v. Doe,* 888 F.2d 783, 787 (11th Cir. 1989)].  Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Rogers*, 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at

25

> 292 ("Medical malpractice does not become a constitutional violation
> merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88
> (mere negligence or medical malpractice 'not sufficient' to constitute
> deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical
> malpractice does not constitute deliberate indifference). Nor does a simple
> difference in medical opinion between the prison's medical staff and the
> inmate as to the latter's diagnosis or course of treatment support a claim of
> cruel and unusual punishment. *See Waldrop*, 871 F.2d at 1033 (citing
> *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (citation and internal quotation marks). To show deliberate indifference, the plaintiff must demonstrate a serious medical need and then must establish that the defendant's response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (citation and internal quotation marks omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (holding that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337,

1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient); *Amarir v. Hill*, 243 F. App'x 353, 354 (9th Cir. 2007) (holding that defendant's "denial of plaintiff's request to see an outside specialist . . . did not amount to deliberate indifference."); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion is "not enough to establish defendant's deliberate indifference" as the allegation does "not show that defendant knowingly disregarded a serious risk of harm to plaintiff" nor that defendant "exposed plaintiff to any serious risk of harm.").

### 2.  Medical Treatment

Plaintiff claims that Dr. Borowicz was deliberately indifferent to his medical needs because beginning on January 22, 2019, through January 20, 2020, he was denied access to surgery to reverse his colostomy and to treat his hernias.  The undisputed evidence shows that sometime after January 22, 2019, Plaintiff suffered from "medical problems associated with a ventral incisional hernia."  (Doc. 36-1 at p. 3).  Following denials of Plaintiff's grievance requests for reversal surgery, Dr. Borowicz on February 5, 2019, initiated a referral of Plaintiff to a free world doctor, which was approved on February 11, 2019, and the appointment originally scheduled for February 15, 2019, was rescheduled for April 18, 2019.  (Doc. 27-5 at p. 2).  Baker was examined by Dr. Barry on

April 18, 2019. *Id.*  A CT scan was performed of his abdomen on June 10, 2019.  (Doc. 36-1 at p. 4).

On September 9, 2019, and September 26, 2019, Plaintiff was seen by medical personnel at Staton, where he inquired about the date for his surgery.  (Doc. 27-5 at p. 10).  No distress and no complaints of pain were noted at these visits.  *Id.*   On November 8, 2019, Dr. Barry ordered that the day before Baker's surgery his colostomy be irrigated, clear liquids after lunch only with milk of magnesium and fleet enema administered at 6:00 p.m.  (Doc. 27-5 at p. 11).  On December 8, 2019, Dr. Barry prescribed for Baker half day bowel prep instructions prior to surgery. (Doc. 27-5 at p. 12). Plaintiff's surgery which, included a "take down of his colostomy" and "repair of massive ventral hernia" (Doc. 36-1 pp. 5-6) was scheduled for some time around December 18, 2019, with prep of Plaintiff performed at Staton Healthcare unit.  (Doc. 14-3 at pp. 3-12).  Surgery was rescheduled and successfully performed by Dr. Barry on January 20, 2020.  (Doc. 36-1 at p. 6).

Recently, the Eleventh Circuit affirmed a jury verdict for an inmate who alleged deliberate indifference against medical defendants who treated him for injuries suffered from a gun-shot wound to the stomach, which occurred prior to incarceration, left bullet fragments in his abdomen, and resulted in him having a colostomy bag, and hernias causing him excruciating pain of which he repeatedly complained to the medical defendants during his incarceration. *Christmas v. Doctor Rodriquez,* Docket Number 21-

28

13400 (11th Cir. Oct. 7, 2022) (unpublished).   In *Christmas,* the Eleventh Circuit affirmed "[s]evere pain that is not promptly or adequately treated can constitute a serious medical need depending on the circumstances". *Id*. at p. 10 citing *Melton v. Abston,* 841 F. 3d 1207, 1222 (11th Cir. 2016).

Even though the facts of the instant action may at first blush appear consistent with those in *Christmas,* two important distinctions exit.   First, the diagnosis and treatment each Plaintiff received prior to his incarceration differ sharply.   Christmas entered custody with prescriptions for oxycodone from his free world doctor and complaints on record of severe pain resulting from hernias and remaining bullet fragments, which precipitated discussion of colostomy reversal between him and his free world doctor.   *Christmas,* Dkt. No. 21-13400 at p. 3.   Similarly, Baker saw his treating free world doctor prior to his incarceration where colostomy reversal plans were discussed based upon his reports of pain at ostomy site and decreased output. (Doc. 14-1 at pp. 1-2). Specifically, noted, however, were Plaintiff's reports of "ostomy functioning with laxatives" and "resolution of his pain with ostomy output."   (Doc. 14-1 at p. 1). Importantly, the medical records do not indicate that Baker was prescribed narcotics for pain by his free-world doctor.   Nor does Baker himself testify as to his use of any pain medication, prescribed or otherwise, prior to his incarceration.   Moreover, his diagnosis from his free-world doctor does not include any mention of hernias or remaining bullet

fragments causing Plaintiff additional problems with his colostomy.  (Doc. 14-1 at pp. 1-2).

Next, the reports of pain made by Christmas to his prison doctors were greater in in number and degree than those of Baker.  Indeed, Christmas made 29 complaints of "excruciating pain" about which his prison doctors were aware while incarcerated from April 25, 2016, through October 28, 2017.  Even though he repeatedly requested pain medication, Christmas was prescribed only Tylenol, anti-depressants and anti-anxiety drugs by the prison doctors.  Finally, Christmas passed out from pain during one examination with prison doctors; he was told to simply rest.  *Christmas,* Dkt. No. 21-13400 at pp. 6-7.

In contrast, from August 2018, when Baker entered Kilby until January 2020, when the surgery was performed, he filed 3 grievances with several appeals where he reported "pain when I have bowel movements" and made no requests for any sort of pain medication.   (Doc. 14-2 at p. 1; 14-3 at p. 1; 14-3 at pp. 3-12).  Finally, in his amended complaint Plaintiff states "relief should be granted to me because of all the pain/emotional distress I went through having that in the dorms, inmates threatening me verbally, calling me names, just to use the restrooms."  (Doc. 14 at p. 2).  Thus, the Court concludes that the evidence in the instant action does not demonstrate the prolonged, unresolved and extreme pain such as Christmas experienced.

After a careful review of all the evidence, the Court concludes that Baker fails to demonstrate deliberate indifference on the part of Dr Borowicz. Indeed, the evidence before the Court does not support a finding that Plaintiff's pain resulting from his colostomy, which was minimally reported in volume and degree and was nonmedicated, created a serious medical need. *See, Christmas,* Dkt. No. 21-13400 at pp. 6-7.  Rather, the evidence before this Court conclusively demonstrates that at most Plaintiff's colostomy condition created him some limited pain and annoyance. Furthermore, Dr. Borowicz testified that once he became aware Plaintiff "experienced medical problems associated with a ventral incisional hernia" which further complicated his colostomy complaints, he was referred to a free-world surgeon for examination.  (Doc. 36-1 at p. 3).

Finally, Plaintiff complains that Dr. Borowicz failed to examine him upon his transfer from Kilby and simply denied his requested colostomy reversal based upon Dr. Rahming's opinion.   However, Baker fails to point to any evidence of which Dr. Borowicz was aware, that he suffered from a serious medical need based upon his colostomy until Baker "experienced medical problems associated with a ventral incisional hernia."  (Doc. 36-1 at p. 3). Further, the record is unclear as to the specific date of Plaintiff's transfer to Staton; however, based upon Plaintiff's specific allegations, the Court will consider this claim beginning January 22, 2019.  (Docs. 1 and 14).  It is undisputed that on February 5, 2019, Dr. Borowicz completed a referral order for Plaintiff to see Dr. Barry. (Doc. 27-5 at p. 2).   Thus, the Court will now turn its

attention to Plaintiff's complaint of delay premised on the filing of his first grievance on January 22, 2019, and Dr. Borowicz' referral of him to the free world surgeon on February 5, 2019, and subsequent events leading up to his surgery, which was performed on January 20, 2020.

In determining whether a delay in medical treatment constitutes deliberate indifference, courts consider the seriousness of the medical need, whether delay worsened the medical condition, and the reason for the delay. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003). Additionally, when an inmate complains that a delay in medical treatment rises to the level of a constitutional violation, he "must place verifying medical evidence in the record" establishing the detrimental effect caused by the delay. *Surber v. Dixie Cty. Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted). Furthermore, the subjective knowledge of risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette,* 533 F.3d at 1331.

Plaintiff's claims of delay fail for two reasons, other than the lack of seriousness of the Plaintiff's colostomy condition, discussed *supra*. First, there is no medical evidence in the record which demonstrates that the alleged delay caused any detrimental effect to Plaintiff. *Surber,* 206 F. App'x at 933. Second, the undisputed evidence does

not support Plaintiff's claims of delay which would rise to the level of deliberate indifference by Dr. Borowicz.  Indeed, within two weeks of Plaintiff's initial grievance filed at Staton, Dr. Borowicz began the referral process for Plaintiff to see an outside surgeon.  (Doc. 27-5 at p. 2).  The appointment scheduled for February 15, 2019, was rescheduled for April 18, 2019.  *Id*.  Indeed, on April 18, 2019, Plaintiff saw Dr. Barry for examination and consult about his colostomy, which had become complicated by his "a ventral incisional hernial."  There is no evidence that Dr. Borowicz was responsible for any delay following his February 5, 2019, referral of Plaintiff.  Thus, the Court concludes that the record does not support a claim for deliberate indifference based on delay against Dr. Borowicz from January 22, 2019, until April 18, 2019.

Likewise, the Court is persuaded that the record fails to support Baker's claims of delay against Dr. Borowicz following Baker's April 18, 2019, appointment with Dr. Barry.  Indeed, Dr. Barry ordered a CT Scan of Plaintiff's abdomen which was performed two months later.  Also, even though surgery was not first scheduled until December, 2019, just over 6 months from this scan, and more than 8 months from Plaintiff's initial visit to Dr. Barry, there is no evidence demonstrating that any of the delays which occurred following Plaintiff's referral to Dr. Barry were the result of any Dr. Borowicz' actions or failures.  Ultimately, on January 20, 2020, Dr. Barry performed surgery on Plaintiff which, included a "take down of his colostomy" and "repair of massive ventral

hernia." (Doc. 36-1 pp. 5-6). Thus, Plaintiff's complaints of Borowicz' deliberate indifference to his medical needs due to delay of his surgery must fail.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Defendants' motions for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the Defendants.

3. This case be DISMISSED with prejudice.

4. No costs be taxed.

On or before **December 16, 2022** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 1st day of December 2022.


＿＿＿＿/s/＿＿Charles S. Coody＿＿＿＿＿＿＿＿
UNITED STATES MAGISTRATE JUDGE